IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CLEMMIE JOHNSON,

                    Plaintiff,                  OPINION AND ORDER

    v.

                                                    17-cv-941-wmc

ERIN DUNAHAY,

                    Defendant.

---

On August 21, 2020, the court held a telephonic final pretrial conference. During that hearing the court reset the trial, to begin for Monday December 14, 2020, at 8:30 a.m. The court also set a telephonic final pretrial conference on Thursday December 10, 2020, at 2:00 pm, with defendant's counsel responsible for arranging plaintiff's participation and initiating the call to the court. In light of Chief Judge Peterson's Administrative Order suspending all civil and criminal trials through January 31, 2021, the court is striking both the December 10 conference and the December 14 trial date, and will direct the clerk of court to set this matter for a telephonic scheduling conference with Magistrate Judge Stephen Crocker.

Also during the hearing, the court further set deadlines for briefing with respect to the following issues: defendants' motion in limine, which seeks to limit plaintiff's compensatory damages to $1 (dkt. #63); and the parties' objections to certain exhibits. The court received the parties' submissions, and Johnson also filed two additional motions to amend his complaint (dkt. ##87, 90), as well as untimely lists of witnesses and additional exhibits (dkt. ##85, 86). After reviewing the parties' submissions, the court rules as follows.

**I.     Johnson's motions to amend and proposed exhibit list and witness list**

Johnson again seeks to amend his complaint, asking to proceed against Dr. Hakes, Dr. Withrow and Ms. Brueggen as members of the Jackson Correctional Institution psychological services unit ("PSU") staff, all of whom allegedly could have prevented Johnson from attempting to hang himself, but failed to do so, and who also were aware of the conditions of his confinement, but failed to take corrective action. Jackson claims in particular that Dr. Hakes and Psychologist Brueggen consciously disregarded his threats of self-harm, and Dr. Withrow visited his cell yet refused to follow-up on his request for a blanket or socks.

The court already denied Johnson's motion to amend to include claims against these additional defendants, finding that Johnson's failure to seek leave to amend until after the dispositive motion deadline would unfairly prejudice defendants. (Dkt. #58, at 8-9.) Indeed, as the court previously noted, although all of this information was within Johnson's personal knowledge from the outset of this lawsuit, Johnson sought leave to proceed against Withrow until March 10, 2020, inexplicably waiting for some two and one-half years and for the dispositive motion deadline to pass. Now Johnson claims that he *did* explain his delay in seeking leave to amend, at least implicitly by complaining that defendants were slow in responding to his discovery requests, his legal materials had been misplaced, and defendants produced the wrong set of policies in place as of September 2017.

To start, Johnson does not attempt to connect those alleged delays to his failure to seek leave to proceed against Brueggen, Hakes and Withrow, and it does not appear that he could make such a connection, again because his claims against these individuals appear to be based almost entirely upon information already within his personal knowledge. Specifically, his claim against defendant Withrow arose directly out of a conversation he had with the plaintiff. As for Psychologist Brueggen, Johnson claims that he had an appointment with Brueggen the day before he attempted to hang himself, and that he told her of his desire to harm himself yet she did nothing to prevent it. Finally, Johnson wishes to hold Dr. Hakes responsible for placing Johnson in temporary lock up. Although it is possible that Johnson may not have been immediately aware that *Hakes* made the decision about his status, he certainly had reason to believe this action arose out of his speaking with Brueggen about his thoughts of self-harm just the day before.

Even assuming that Johnson would have needed to conduct discovery to identify the names of any of these individuals, and especially to determine Dr. Hakes' role, Johnson did not include *any* of them as proposed Doe defendants in his complaint, so there was no reason for the court or defendants to infer that Johnson might attempt to amend his complaint, much less wait for two and one-half years to do so. Moreover, Johnson certainly cannot point to defendant as responsible for his delay. Even in November of 2019, when Johnson *did* file a motion to compel responses to his interrogatories and requests for production (dkt. #28), Magistrate Judge Crocker

3

denied it because Johnson had failed serve defendants those discovery requests (dkt. #33). While Johnson's mistake may have been the source of some delay, he neither explains waiting so long to pursue discovery, nor suggests that once he properly served his discovery requests, defendants delayed producing information, much less that this information was necessary to seek to amend his complaint.

While Johnson does suggest that defendant Dunahay would not be prejudiced by the addition of new defendants, even this misses the point: inevitably, Hakes, Withrow and Brueggen would be entitled to take discovery and prepare their own motion for summary judgment, which would prejudice Dunahay, who has been prepared to proceed to trial since September. Regardless, the court has *no* basis to conclude that Johnson lacked the information necessary to seek leave to amend his complaint sooner, and there must be some end to this lawsuit. Accordingly, his motions to amend or for reconsideration of the court's prior order, will be denied.

Relatedly, without leave of court, Johnson offered an untimely additional list of exhibits (dkt. #85) and a witness list (dkt. #86). Specifically, Johnson lists eight, new exhibits and nine new witnesses, all of whom were or are JCI employees. Defendant objects to Johnson's late disclosure of these proposed exhibits and witnesses, especially given his failure to explain *why* these additions were not included in his earlier submissions. This objection is well-taken. *Both* the Preliminary Pretrial Conference Order and the Trial Preparation Order established *July 24, 2019,* as the deadline for the parties to disclose their proposed exhibits and witnesses. (Dkt. #22, at 11; dkt. #59, at 6.) Additionally, the Trial Preparation Order provided more specific directions with respect to requesting the

4

appearance of unincarcerated witnesses. (Dkt. #59, at 7.) Johnson neither followed those procedures nor explained his failure to do so.

The court previously granted Johnson leeway with respect to pre-trial filings, even accepting some late-filed submissions, but past leniency is not a justification for Johnson's attempt to take *further* advantage with respect to even more egregious violations of the established pre-trial deadlines. In particular, during the final pretrial conference itself, the court allowed Johnson to object to defendant's exhibits, yet he made no mention of wishing to propose additional witnesses or exhibits. Nor did this court open the door in any way for Johnson to request to submit more exhibits or witnesses after that conference. Since Johnson provides no reason for his failure to include these submissions earlier, the court agrees that this evidence should be excluded from admission at trial.

Despite this ruling, there is significant overlap between Johnson's late disclosures and disclosures that have already been made. In particular, defendant's Rule 26(a)(3) disclosures list four witnesses (in addition to Dunahay) that Johnson lists: Lieutenant D. Smith, Gerke and Mann. (*See* dkt. #60.) As for the exhibits, six of Johnson's seven additional exhibits are portions of, or copies of, defendant's exhibits. Accordingly, the court will not preclude Johnson from calling these witnesses nor using those exhibits during trial. Moreover, the only exception is Johnson's Exhibit 17, which is a *copy* of Johnson's previously disclosed Exhibit 7. (*See* dkt. #68-7.) As such, with the exception of five proposed witnesses (Captain Hottenstein, Kunhart, Golat, Middleton and Withrow), Johnson should have access to most of the witnesses and exhibits he seeks to admit in these late-filed submissions, although he may need to subpoena their appearance in advance, at

5

least to the extent defendant does not expect to call or introduce them.

## II. Compensatory damages

During the August 21 hearing, the court also granted defendant's motion in limine limiting plaintiff's compensatory damages to $1 (dkt. #63), reasoning that his assertions -- that after being removed from observation status, he experienced stomach pain (*see* dkt. #49, at 4) and felt itchy and burning sensations (*see* dkt. #44, at 4) -- do *not* support a finding that his physical injury was more than *de minimus*. Nonetheless, during the hearing, plaintiff asserted that he might be able to submit further argument and evidence on this question, prompting the court to give him 10 days to seek reconsideration by submitting supporting legal authorities or other evidence of his physical injuries related to his time on observation status between September 7 and 13, 2017.

In response, rather than submit only new material, Johnson now seeks reconsideration, pointing out that his attempt to hang himself with a "bed-sheet tied around his neck . . . indeed cause[d] ligature marks on the back of his neck[,] which [a] nurse consider[ed an] injury." (Dkt. #89.) Johnson adds that he also complained about a sore shoulder after being forcefully held down while correctional officers were attempting to cut the bed-sheet off of his neck. Defendant does not argue that these additional facts would not amount to a physical injury, but instead argues that: (1) these physical injuries occurred *before* Johnson was placed on observation status; and (2) Dunahay had no involvement with the events leading up to Johnson's attempt at hanging himself nor with any response to that attempt. In reply, Johnson does not respond to defendant's argument,

but instead directs the court back to his early arguments that he had a scab from dried feces that caused burning while he showered and required him to apply Vaseline. As the court previously noted, however, minor ailments (such as headaches, insomnia, periodic weight loss, fatigue, and muscle cramping) do not meet the physical injury requirement set forth in 42 U.S.C. § 1997e(e). *Shaw v. Wall*, No. 12-cv-497-wmc, 2015 WL 1925045, at *2 (W.D. Wis. Apr. 28, 2015) (discomfort from stuffy nose, and "heart ache" due to discrimination); *Hoskins v. Crag*, No. 11-296-GPM, 2011 WL 5547460, at *3 (S.D. Ill. Nov. 15, 2011) (insomnia and headaches); *Agrawal v. Briely*, No. 02-C-6807, 2006 WL 3523750, at *14 (N.D. Ill. Dec. 6, 2006) (headaches); *Boyd v. Wright*, No. 09-CV-1357, 2011 WL 1790347, at *2 (C.D. Ill. May 10, 2011) (assertion of "periodic weight loss" insufficient to establish physical injury). Since plaintiff has still not proffered any evidence suggesting that his physical injuries were more than *de minimus*, the court will deny his motion for reconsideration.

### III. Exhibits

During the final pretrial conference, the court discussed the parties' exhibits at length. Because at that time Johnson had yet to respond to defendant's objections, the court gave Johnson the opportunity to submit a response, as well as any objections to defendant's exhibits, including in particular whether he objects to defendant's proposal to redact from Exhibit 501, section V of DAI Policy 500.70.24, and use that exhibit rather than plaintiff's Exhibit 2, which is a portion of that policy. Johnson subsequently submitted objections to defendant's exhibits (dkt. #83), and objections to the court's

7

rulings excluding some of his proposed exhibits (dkt. #84).

The court addresses these objections below, but as an initial matter, notes that Johnson did not address defendant's Exhibit 501. As such, the court will infer that he had no objection to defendant's offering this redacted portion of Exhibit 501, rather than his proposed Exhibit 2, so defendant may redact Exhibit 501 accordingly *and* provide Johnson an updated copy of that exhibit.

Johnson also objects to defendant's Exhibits 517, 519, 524, 525, 526 and 530. As to Exhibits 517 and 519, Johnson objects on the basis that these exhibits (two inmate complaints) are hearsay and duplicative of trial testimony. Since defendant intends to only offer *Johnson's* written portions of the complaints into evidence, those portions are admissible under Federal Rule of Evidence 801(d)(2) as statements of a party opponent. Given that the court rejected defendant's argument that his declaration would be duplicative, the court similarly rejects Johnson's argument that his statements in the inmate complaints would be duplicative. Accordingly, Johnson's objections to Exhibits 517 and 519 are overruled, except to the extent they contain information not attributable to plaintiff either as his direct statements or his arguable adoption of another's statements.

As to Exhibits 524, 525, 526, 530 -- photographs of Jackson Correctional Institution ("JCI") observation cell #001 -- Johnson objects because (1) he was placed in a different observation cell, #028, and (2) the photographs in Exhibits 524, 525 and 526 show crocs, toilet paper and a crayon outside of the cell. Johnson claims that the materials outside the cell are misleading because none of these materials were available to him when he was on observation status in 2017.

In response, defendant explains that the photograph was of cell #001 because cell #028 was in use, and defense counsel further represents that Jackson staff informed them that the two observation cells are identical.  As for the materials outside the cell, defendant's position is that staff at Jackson represent that these materials are available, and Johnson is free to testify that he did not actually have access to any of these materials when he was being held in the observation cell.

The court will reserve on the admissibility of these photographs but is inclined to sustain Johnson's objections to Exhibits 524, 525 and 526.  Defendant's explanation that cell #028 has been occupied non-stop is not particularly satisfying, since defendant has not provided a declaration from a JCI staff member confirming as much, yet Johnson does not suggest that the layout of the two cells are different in any meaningful way.  Absent a more specific proffer from Johnson detailing the differences between the two cells, the fact that the pictures are of different cells does not appear to be of significance.

The court *is* more troubled by the presence of crocs, crayon and toilet paper appearing in Exhibits 524, 525 and 526, agreeing that the presence of these materials might paint an inaccurate picture of how the cell looked at the time Johnson was housed there. Absent a proffer of testimony from a Jackson staff member who could testify that the crocs, toilet paper and crayon were actually outside of cell #028 when Johnson was housed there in September 2017, the court is inclined to sustain Johnson's objection to these three exhibits or, at least, require the deletion of those items from the picture.

Relatedly, per the court's directive at the August 21 hearing, defendant filed a motion to amend her exhibit list to include pictures of the air vent in cell #001, taken in

a format similar to defendant's Exhibits 524-530. Defendant designated those five photographs as Exhibits 535-539. (*See* dkt. ##95, 95-1 through 95-6.) The court will GRANT defendant's request to amend her exhibit list to include these additional photographs. Moreover, those photographs do not show a crayon, crocs or toilet paper, so Johnson does not object to those photographs on that basis; instead, he again takes issue with the fact that the photographs are *not* of cell #028. Since it is at least conceivable that the vents location, position or existence may be materially different in cell #028, defendant may substitute all of these cell pictures with one of cell #028. Otherwise, given that Johnson has not pointed to any material difference between the two cells, the court will reserve on Johnson's objections to defendant's Exhibits 524, 525, 526, 530, and 535-539.

Additionally, Johnson objects to the court's decision to exclude his Exhibits 3, 5, 6, 11, 12 and 14. (Dkt. #84.) In its previous order, the court sustained defendant's objections to Exhibits 3, 5, 6, 11 and 14 because these exhibits are portions of findings of fact related to defendants' motion for summary judgment, much of which included legal analysis and argument. (Dkt. #82 at 4-5.) As for Exhibit 12 -- an inmate complaint Johnson submitted about the incident -- the court sustained defendant's objection because it was hearsay, but noted that if offered by defendant, Johnson's statement would be admissible as offered by a party opponent. (*Id.*) In his objection, Johnson does not address the court's reasoning, and instead argues the relevance of these materials. Yet the court did not question the relevance of those proposed exhibits before deeming them inadmissible. Since Johnson has not provided reason for the court to reconsider its evidentiary rulings as to these exhibits, his objections are overruled.

ORDER

IT IS ORDERED THAT:

1. Plaintiff Clemmie Johnson's objection to defendant's exhibits (dkt. #83) is RESERVED in part and DENIED in part as set forth above.

2. Plaintiff's objection to excluding exhibits (dkt. #84) is OVERRULED in part and RESERVED in part as set forth above.

3. Defendant Erin Dunahay's motion to amend/correct exhibit list (dkt. #95) is GRANTED.

4. Plaintiff's motions to amend and for reconsideration of motion to amend (dkt. ##87, 90) are DENIED.

5. Plaintiff's motion to reconsider compensatory damages (dkt. #89) is DENIED.

6. The December 10 telephonic final pretrial conference and December 14 trial date are STRUCK. The clerk of court is directed to set this matter for a scheduling conference with Magistrate Judge Stephen Crocker.

Entered this 20th day of November, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge